UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CHARLES BOOKER,

        Plaintiff,                      Case No. 1:16-cv-742

v.                                    Honorable Paul L. Maloney

NATIONAL CORRECTIVE GROUP INC. et al,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff is currently incarcerated with the Michigan Department of Corrections at the Pugsley Correctional Facility in Kingsley, Michigan. The allegations in his complaint do not relate to the conditions of his confinement by the Michigan Department of Corrections. Instead, Plaintiff complains that Defendants National Corrective Group Inc., its executive officer Mats Jonsson, and unknown related companies violated his constitutional rights through Defendants' participation in a bad check diversion program[1] during the spring and summer of 2012.

Plaintiff received a notice dated March 19, 2012 indicating that he had been accused of violating the Michigan Penal Code by writing a bad check. (ECF No. 1-1, PageID.12-13.) The notice indicated it was from the Kent County Prosecuting Attorney Bad Check Restitution Program. It appeared to bear the signature of Kent County Prosecuting Attorney Bill Forsyth. According to Plaintiff, the notice was crafted and sent by one or more of the Defendants.

The notice indicated that Plaintiff could avoid criminal prosecution for a $16.74 bad check he had written to CVS Pharmacy by paying the amount of the check, a $25.00 returned item fee, and a financial accountability class fee of $190.00. The notice made clear that Plaintiff could contest the matter and that participation was voluntary.

Plaintiff paid the amount requested and completed the financial accountability class. He was not prosecuted for the bad check.

---

[1] A bad check diversion program permits the writer of a bad check to avoid criminal prosecution. Essentially, the local prosecuting attorney enters into a contract with a private entity for the processing and recovery of bad checks. *See, i.e. Gradisher v. Check Enforcement Unit, Inc.*, 210 F. Supp. 2d 907 (W.D. Mich. 2002). Typically, the private entity, on behalf of the prosecutor, "invites" the bad check writer to avoid criminal prosecution by paying the amount of the bad check, a returned item fee, and/or other fees (here a financial accountability class fee).

During December of 2015, Plaintiff received a notice from the Consumer Financial Protection Bureau with a check for $200.00. (ECF No. 1-1, PageID.9-10.) The notice indicated that Plaintiff had been the victim of National Corrective Group, Inc., its executive officer Mats Jonsson, or possibly related companies. The Consumer Financial Protection Bureau had filed suit against the Defendants alleging that they violated the federal Fair Debt Collection Practices Act and federal Consumer Financial Protection Act by threatening persons such as Plaintiff with criminal prosecution for writing bounced checks. *Consumer Financial Protection Bureau v. National Corrective Group, Inc. et al.*, D. Md. No. 1:15-cv-899 (ECF No. 1). National Corrective Group, Inc., Mats Jonsson, and the related companies settled that suit. The $200 payment refunded to Plaintiff was funded by the settlement.

Plaintiff contends that the settlement constitutes an admission of guilt by the Defendants. He seeks a damage award of two-million dollars for their violation of his rights.

## Discussion

I.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

In his one-paragraph statement of his claim, Plaintiff does not identify any specific constitutional right that Defendants have violated. Read liberally, however, his complaint alleges that Defendants deprived him of property without due process of law in violation of the Fourteenth Amendment. The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).

Several courts, including this one, have considered and rejected claims that voluntary payments in connection with a bad check diversion program are unconstitutional, concluding that such payments are not a deprivation of property and that the programs provide adequate process. *Silvernail v. County of Kent*, 385 F.3d 601, 605 (6th Cir. 2004) ("[U]nder the balancing of the interests required by [*Mathews v. Eldridge*, 424 U.S. 319 (1976)], the process provided by the County's bad check collection scheme is constitutionally sufficient."); *Del Campo v. Kennedy*, No. 3:01-cv-21151, p. 5 (N.D. Cal. May 8, 2002) ("Participation in the Bad Checks Program, however, is of an optional and voluntary nature. If Plaintiff chose to exercise her right not to participate in the Bad Checks Program, ACCS duly informed her that she could be criminally prosecuted by the District Attorney. This is not to say, however, that she would be deprived of her civil rights. Specifically, if the District Attorney opted to prosecute Plaintiff in Municipal Court, she was still entitled to a hearing before a court of law."); *Gradisher v. Cty. of Muskegon*, No. 1:02-cv-370, p. 12 (W.D. Mich. Feb. 24, 2003) *aff'd* 108 F. App'x 388 (6th Cir. 2004) ("[T]he Court concludes that Plaintiffs have failed to allege a due process claim because there was no deprivation and the notices afforded Plaintiffs adequate procedural rights."); *Hamilton v. Am. Corrective Counseling Servs., Inc.*, No. 3:05-cv-434RM, 2006 WL 3332828 at *4 (N.D. Ind. Nov. 14, 2006) ("Check writers who receive a letter of notice are given two options: (1) enroll in the program and pay the check amount plus program fees, or (2) not enroll in the program and face the possibility of a criminal proceeding conducted in accordance with due process. Recipients who choose to enroll in the program can be said to make restitution voluntarily, so no government action has deprived them of a property interest. . . . [R]egardless of the option a check-writer selects, the writer receives sufficient process even if the court assumes that they have been deprived of their property."); *Schwarm v.*

*Craighead*, 552 F. Supp. 2d 1056, 1083-1085 (E.D. Cal. 2008) (dismissing § 1983 claim citing *Del Campo, Gradisher,* and *Hamilton*).

Based on the reasoning in *Silvernail*, *Gradisher*, *Del Campo*, and *Hamilton*, this Court is compelled to similarly conclude that Plaintiff has failed to state a claim for violation of his constitutional rights based on this iteration of the bad check diversion program. Plaintiff's payment was voluntary and the process afforded him was constitutionally adequate.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:   July 19, 2016                             /s/ Paul L. Maloney
                                                  Paul L. Maloney
                                                  United States District Judge